

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

September 15, 2025

**BY ECF**
The Honorable Margaret M. Garnett
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States v. Terry Brooks*, 25 Cr. 73 (MMG)

Dear Judge Garnett:

      The Government respectfully submits this letter in advance of the sentencing of Terry Brooks, scheduled for September 22, 2025, and in response to the defendant's sentencing submission dated September 8, 2025 (Dkt. 26). For the reasons explained below, the Government respectfully submits that a sentence of 108 months' imprisonment, the top of the Stipulated Guidelines Range, would be sufficient but not greater than necessary to achieve the goals of sentencing.

**I.**    **Background**

      **A.  Procedural History**

      On February 26, 2025, a grand jury sitting in this district returned an indictment (the "Indictment") charging the defendant in one count with possessing ammunition after a felony conviction on or about November 12, 2023, in violation of 18 U.S.C. § 922(g)(1) ("Count One"); one count of possession of firearms and ammunition after a felony conviction on or about August 14, 2024, in violation of 18 U.S.C. § 922(g)(1) ("Count Two"); and one count of possession of firearms and ammunition after a felony conviction on or about August 21, 2024, in violation of 18 U.S.C. § 922(g)(1) ("Count Three").

      On June 12, 2025, the defendant pleaded guilty to Counts One and Two pursuant a plea agreement (the "Plea Agreement"). In the Plea Agreement, the defendant also admitted as relevant conduct: (1) that on or about November 12, 2023, in connection with the conduct charged in Count One, the defendant shot a firearm in the area of East 180th Street and Bathgate Avenue in the Bronx, New York, intending to strike an individual, and instead striking a third-party bystander (the "Victim"); and (2) on or about August 21, 2024, in the Southern District of New York, the defendant, knowing that he had been convicted of a felony, knowingly possessed a firearm and ammunition after a felony conviction, as charged in Count Three.

**B. Offense Conduct**

On November 12, 2023, just before 10:00 p.m., the defendant left a particular hotel in the Bronx (the "Hotel") with a female companion, entered a Corolla sedan, and drove to a nearby smoke shop on the corner of East 180th Street and Bathgate Avenue in the Bronx (the "Shop"). (PSR ¶¶ 10-11.) The defendant entered the Shop and made a purchase. (*Id.*) While the defendant was at the register, another man entered the Shop and appeared to brush up against and exchange words with the defendant. (*Id.*) The defendant exited the Shop and walked to the Corolla, which had been parked just outside. (*Id.* ¶ 12.) The other man also exited the Shop and appeared to exchange additional words with the defendant. (*Id.*) The other man then turned and walked away from the defendant. (*Id.*) As the other man walked away, his back turned, the defendant reached into his waistband, took several steps towards the other man, and fired one shot from a firearm. (*Id.* ¶ 13). The below still image from surveillance video captures the moment at which the defendant (circled in red) shot the firearm:



The round did not hit the other man (underlined in green); instead, it struck the Victim, a woman standing outside the Shop (underlined in yellow) (the "Shooting"). (*Id.*)[1] The defendant then fled back to the Hotel. (*Id.* ¶¶ 14-15.) Within minutes, New York City Police Department ("NYPD") officers responded to the scene and recovered a shell casing (the "Shell Casing"). (*Id.* ¶ 16.)

On November 20, 2023, the defendant was arrested by the NYPD in connection with the Shooting. (*Id.* ¶ 20.)[2]

---

[1] Surveillance video of the Shooting is provided at **Exhibit A**. Surveillance video from inside the Shop is provided at **Exhibit B**.

[2] The defendant was arrested in connection with the Shooting on November 20, 2023 and charged by the Bronx District Attorney's Office, which has since dismissed its case in light of this case.

On August 12, 2024, the Supreme Court of the State of New York issued warrants authorizing searches of the defendant's residences in the Bronx and in Brooklyn. (*Id.* ¶ 31.) At the Bronx address, officers recovered, *inter alia*, six firearms, including an assault rifle and two privately manufactured "ghost guns" that do not contain serial numbers. (*Id.* ¶ 32.) At the Brooklyn address, officers recovered, *inter alia*, two firearms and multiple calibers of ammunition. (*Id.* ¶ 35.)

After analysis, the NYPD's Police Laboratory Firearms Analysis Section determined that the Shell Casing recovered from the Shooting was discharged from one of the ghost guns found at the Bronx address. (*Id.* ¶ 34.)

On August 21, 2024, officers arrested the defendant at the Hotel. (*Id.* ¶ 40.) Officers also recovered a loaded firearm in plain view on the nightstand. (*Id.*) In total, the defendant possessed nine firearms and multiple calibers of ammunition.[3]

### C. The Guidelines Calculations

The Plea Agreement calculated the total offense level as 29, the criminal history category as I, and the Stipulated Guidelines Range as 87 to 108 months' imprisonment.

The PSR calculated the total offense level as 30, the criminal history category as III, and the Guidelines range as 121 months to 151 months' imprisonment. (PSR ¶ 142.) For the reasons set forth below, the Government does not dispute Probation's Guidelines calculation, but the Government stands by the Stipulated Guidelines Range calculated in the Plea Agreement.

The disparity between the two calculations stems from the defendant's June 19, 1996 conviction of robbery in the first degree (the "Robbery Conviction"), for which the defendant was sentenced to a term of eight to sixteen years' imprisonment. (PSR ¶ 80.) The defendant was initially released from incarceration on or about October 19, 2006 (the "Initial Release"), violated the terms of his parole, had his parole revoked, and was reincarcerated until on or about December 7, 2009 (the "Final Release"). At the time the Plea Agreement was executed, the Government (incorrectly) believed that the Initial Release was the latest time the defendant was released from incarceration on the Robbery Conviction; on that basis, the Government determined that, because the Initial Release occurred more than fifteen years prior to the defendant's commission of the instant offense, which began on or about November 12, 2023 (the "Fifteen-Year Period"), *see* U.S.S.G. § 4A1.2(e), the defendant did not receive criminal history points for the Robbery Conviction. The Government now understands that, in fact, the Final Release was the most recent time the defendant was released from incarceration on the Robbery Conviction. Because the Final Release occurred within the Fifteen-Year Period, the defendant receives three criminal history points for the Robbery Conviction. *See* U.S.S.G. §§ 4A1.1(a); 4A1.2(e); 4A1.2(k)(2)(A); (PSR ¶ 80).

---

[3] On December 23, 2024, the defendant was arrested again on a separate firearms charge, for criminal possession of a weapon in the second degree (a loaded ghost gun). The New York District Attorney's Office is prosecuting that case. *People v. Terry Brooks*, No. IND-70048-25/001 (N.Y. Supreme Crim. Ct.). The case remains active.

Because the Robbery Conviction is one for which the defendant receives criminal history points, the defendant also receives one criminal history point each as to three other convictions of crimes of violence (also robberies in the first degree) pursuant to U.S.S.G. § 4A1.1(d), because the sentences imposed on such convictions were imposed on the same date as the sentence imposed for the Robbery Conviction and thus are treated as a single sentence. *See* U.S.S.G. § 4A1.2(a)(2)(B); (PSR ¶¶ 81-83).

Because the Robbery Conviction is one for which the defendant receives criminal history points, the applicable base offense level is 22. *See* U.S.S.G. § 2K2.1(a)(3); (PSR ¶¶ 54, 143).

Accordingly, the Government does not object to Probation's Guidelines calculation, but the Government stands by the Stipulated Guidelines Range as calculated in the Plea Agreement.

## II.    Discussion

### A.  Applicable Law

The Guidelines continue to provide important guidance to the Court following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 552 U.S. 38, 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings, *id.* at 49. After that calculation, however, the Court must consider the seven factors outlined in 18 U.S.C. § 3553(a), which include the nature and circumstances of the offense, the individual characteristics of the defendant, and the need to adequately deter criminal conduct, to protect the public, to promote respect for the law, and to avoid unwarranted sentencing disparities. *Id.* & n.6.

### B.  Argument

A sentence of 108 months' imprisonment, the top of the Stipulated Guidelines Range, is necessary to reflect the nature and seriousness of the offense and the defendant's criminal history, to promote respect for the law, to afford adequate deterrence, to protect the public, and to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a).

*First*, the defendant's violent and extremely dangerous offense conduct evinces a plain need to protect the public. The defendant attempted to shoot a man in the back as the man was walking away. The defendant could have simply walked away following an apparent verbal dispute. Instead, the defendant chose to take several steps towards the man and to shoot at the man's back — a particularly violent crime that warrants a particularly serious punishment.

The defendant's conduct also caused serious harm, although not to his intended victim. The defendant's shot missed his target, striking instead the Victim, an innocent woman who was standing in the wrong place at the wrong time. The bullet struck the Victim in the abdomen and came to rest near the Victim's spine. (PSR ¶ 13.) The Victim was transported to the hospital for immediate surgery. (*Id.*) Although the Victim survived, doctors were unable to remove the bullet, which remains lodged in the Victim's abdomen. (*Id.* ¶ 48.) Recovery has been arduous. The Victim has experienced paralysis in her right leg. (*Id.*) The Victim has undergone "ten months of

grueling therapy," and this recovery impacted her ability to work. (*Id.*) Psychologically, the Victim continues to suffer; she is often afraid and cries. (*Id.*). In addition to the physical and psychological harms caused by being shot by the defendant, the Victim estimates an overall financial loss between $60,000 and $80,000. (*Id.*)[4] In light of the harms inflicted on the Victim, a substantial sentence is necessary to afford just punishment, to reflect the nature and seriousness of the offense, and to promote respect for the law.

The defendant's offense conduct, moreover, was not limited to the Shooting. He unlawfully possessed nine firearms and nearly one hundred rounds of ammunition in multiple calibers. (PSR ¶¶ 5, 55.) Two of the firearms were stolen. (PSR ¶ 45.) Two other of the firearms were ghost guns, which law enforcement cannot trace because they do not contain serial numbers (*id.*), and which are illegal for anyone to possess under state law, *see* N.Y.P.L. § 265.01(09), even absent the defendant's status as a felon. The defendant used one of these ghost guns to carry out the Shooting. Given the sheer quantity of guns the defendant illegally possessed and the aggravating facts that some were stolen and some were ghost guns, this would be an especially serious felon-in-possession case even if the defendant had not shot someone.

*Second*, the defendant's extensive and violent criminal history also warrants a sentence at the top of the Stipulated Guidelines Range. Most serious is the defendant's June 19, 1996 Robbery Conviction, in violation of N.Y.P.L. § 160.15(04), for which the defendant served over a decade in prison. (PSR ¶¶ 80-87.) The lengthy sentence reflected that the defendant committed a string of armed robberies in December 1995, during the course of several of which the defendant brandished a firearm. Beyond that conduct, the defendant's other criminal history includes: (1) several theft, larceny, and fraud convictions (PSR ¶¶ 68-72, 74-76, 78-79, 96); (2) two drug possession convictions (PSR ¶¶ 73, 100); (3) an escape conviction (PSR ¶ 77); and (4) an attempted assault conviction (PSR ¶ 88). The defendant clearly has not aged out of criminal conduct, and his inability or unwillingness to refrain from dangerous and criminal conduct for decades should be a significant factor in the Court's consideration.

*Third*, a substantial sentence is necessary to afford some measure of deterrence, to promote respect for the law, and to protect the public from further crimes of the defendant. General deterrence is a significant factor for any gun-related offense, especially for individuals who have previously committed violent crimes. Specific deterrence is also an important consideration, where the defendant (a) chose to possess nine firearms, including two ghost guns and two stolen guns, having sustained multiple prior violent felony convictions, and (b) chose to use one of those ghost guns to shoot someone. Moreover, it is telling that, in December 2024, just months after the August 2024 searches of the defendant's residences and his arrest, which resulted in the recovery of the firearms in this case — and while the defendant was out on bail in connection with his state firearms case — the defendant was arrested *again* in possession of *another* firearm. That firearm too was an unserialized ghost gun. The defendant has repeatedly failed to conform his conduct to

---

[4] The Government understands the Victim intends to appear at sentencing. The Government is attempting to acquire documents concerning the Victim's losses. To allow additional time for this, the Government respectfully requests, pursuant to 18 U.S.C. § 3664(d)(5), that the Court "set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing."

the law, demonstrating that he remains a danger to those around him. A substantial sentence is therefore necessary both to afford deterrence and to protect the public.

*Finally*, the defendant's offense conduct and criminal history are both particularly egregious in several ways that are not captured by either the Stipulated Guidelines Range or the Guidelines range as calculated by the Probation Office. The defendant has a dozen prior convictions that are too old to affect the Guidelines range. (PSR ¶¶ 68-79). Two of the nine guns he possessed were stolen — again, something that does not affect the Guidelines range. (PSR ¶ 45). And most importantly, the Guidelines range is not altered by the fact that the defendant attempted to kill someone and seriously injured a bystander. The defendant's offense conduct constituted attempted second-degree murder, as the defendant conceded in the plea agreement. As the PSR correctly observes, however, this does not alter the Guidelines range. (PSR ¶ 61 n.5). For all these reasons, a sentence at the top of the Stipulated Guidelines Range is warranted.

The Government is not unsympathetic to the defendant's circumstances, including his challenging upbringing (PSR ¶¶ 110-12, 123), but the defendant's violent and repeated offense conduct weighs heavily in favor of a term of incarceration at the top of the Stipulated Guidelines Range, which will signal to the defendant and others who engage in firearm offenses that such conduct, particularly where it involves violence, will be met with serious consequences.

### III. Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a term of 108 months' imprisonment, the top of the Stipulated Guidelines Range, as such a sentence would be sufficient but not greater than necessary to serve the purposes of sentencing.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By: /s/_____
Kevin Grossinger
James Mandilk
Assistant United States Attorneys
212-637-2426/2453

cc: Jonathan Marvinny, Esq. (by ECF)
U.S. Probation Officer Megan Henriquez (by email)

6